IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>JULIAN TYLER BAUGHMAN,<br><br>Defendant/Movant. | CR 19–63–BLG–SPW<br><br><br>OPINION and<br>ORDER |

On May 16, 2019, a grand jury charged Defendant/Movant Julian Tyler Baughman with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 1), being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 2), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3).  (Doc. 3.)  Following a jury trial in December 2019, Baughman was convicted on all three counts, (*see* Doc. 37), and, on June 5, 2020, sentenced to a total custodial sentence of 240 months, (*see* Doc. 56).  In May 2021, his convictions were affirmed on appeal.  (Docs. 69, 70.)

In March 2022, Baughman filed a pro se motion for federal habeas relief under 28 U.S.C. § 2255, alleging numerous claims of ineffective assistance of trial counsel, including defense counsel's admission at trial that Baughman was guilty

1

of Count 2, the felon in possession charge. (Docs. 73, 75.) Although Baughman's motion was denied, a certificate of appealability was granted as to that individual claim, which is known as a "*McCoy* claim." *See McCoy v. Louisiana*, 584 U.S. 414 (2018); (Doc. 76). On appeal, the Ninth Circuit held that "[w]hether or not Baughman registered his disagreement with counsel during trial cannot be discerned from the record before the district court. Nor is the applicability of *McCoy* to the facts alleged by Baughman clear." (Doc. 84 at 3.) Thus, the case was remanded to "resolve facts and decide [this] legal issue." (*Id.*)

Proceeding with counsel on remand, Baughman insists that he can pursue his *McCoy* claim in the context of a § 2255 motion and that the record validates that claim. (Docs. 99, 107.) The government disagrees. (Doc. 102.) An evidentiary hearing was held on May 1, 2026. Baughman's request for habeas relief is denied.

**BACKGROUND**

## I.    Trial

A two-day jury trial was held in December 2019. (*See* Docs. 63–65 (transcripts)[1], 37 (verdict).) The government called six witnesses, including four law enforcement officers. (*See* Doc. 43.) The defense called no witnesses. The government's case and the defense's theory are outlined below.

### A.    The Case Against Baughman

---

[1] The trial transcript is cited as "(Tr. [page no.].)"

On April 10, 2019, law enforcement arrested Baughman after receiving a tip from his friend, Bob Tyran, that Baughman, who was a felon, may be in possession of a firearm. (Tr. 28–29, 36, 37–38.) Law enforcement observed Baughman and another individual, Heath Paulicheck, arrive at Tyran's house in a white Chevy Blazer with North Dakota plates. (Tr. 38–40, 43.) Paulicheck was driving and Baughman was in the front passenger seat. (Tr. 64.) Baughman was walking with a cane. (Tr. 40.) Baughman and Paulicheck entered Tyran's house and stayed for about 20 minutes. (Tr. 31, 40.) According to Tyran, Baughman was limping and admitted to shooting himself in the foot with a .357 pistol. (Tr. 30.) He was also carrying a Glock. (Tr. 30–31.) Baughman asked Tyran, who makes firearm holsters, to make some holsters for firearms Baughman had in his car. (Tr. 29–31.) When the three men went outside to get the firearms, Baughman was arrested. (Tr. 31, 41.) Baughman told law enforcement he had a gun, and they found a Glock in a belly holster with an extra fully loaded magazine. (Tr. 41–43; Ex. 1.) Baughman also had a cell phone and $1,086 in cash in his pockets. (Tr. 43, 70–71, 78.) The officers asked Paulicheck if he had any possessions in the Blazer, and Paulicheck said there was a backpack in the back seat that was his. (Tr. 64.)

Law enforcement ran the registration for the Chevy Blazer and determined it was registered to Daniel Vareberg, (Tr. 39), who confirmed he had sold the Blazer four days earlier to a man with crutches and gave that man the title, (Tr. 55–58,

3

62.)  In the back seat, officers discovered a United States Postal Service envelope containing 597 grams of actual methamphetamine in two sealed packages, (Tr. 50–52; Doc. 42-2 at 6–7), and a digital scale, (Tr. 50–51; Doc. 42-2 at 4–5).  They also recovered a backpack containing no contraband and returned it to Paulicheck.  (Tr. 65.)  In the rear of the Blazer, officers discovered a white backpack containing two loaded semi-automatic pistols.  (Tr. 66–68.)  Also in this backpack, officers discovered receipts for approximately $3,600 in money orders and the title to the Blazer.  (Tr. 69–70, 89.)

Law enforcement also searched Baughman's cell phone.  (*See* Ex. 4.)  Those records showed exchanges related to the sale of drugs and firearms.  (Tr. 81–106; Doc. 42-2 at 19–39.)  More specifically, the cell phone contained texts or messages with photographs of one of the handguns found in the white backpack in the Blazer, (Tr. 85–86); a photograph of one of the plastic bags of methamphetamine recovered from the rear seat of the Blazer with the caption, "straight from the border, brotha," (Tr. 87–88); a photograph of money orders in the amount of $3,600 with the same identification numbers as the receipts found in the Blazer, (Tr. 88–93); and an outgoing text stating, "[s]ent 3600 today ima try to send 2600 more Monday if I collect some stuff if not I'll just sent as much as I got.  Pretty sure I'll have it all covered though thats [sic] two clear and one dark plus your whole 1 for your cut," (Tr. 99).  There were also text exchanges connecting the

4

owner of the cell phone to the Blazer, including one stating, "I'll be back soon w [sic] wheels" and "[o]ld full size blazer it runs good but it's a rust bucket." (Tr. 103.) To reinforce Baughman's connection to the cell phone, law enforcement reviewed Baughman's jail calls, including a video call on April 13, 2019, wherein Baughman told someone that law enforcement had his cell phone. (Tr. 79–80; Ex. 11.) According to the government, the contents of the cell phone show that Baughman had just bought the pound of methamphetamine found in the USPS envelope with $3,600 in money orders and was carrying loaded firearms to protect it. (*See* Tr. 22, 218.)

The parties stipulated to the following facts: there was a continuous chain of custody for the methamphetamine recovered from the Blazer and it totaled 597 grams of actual methamphetamine; Baughman knew he had a felony at the time of his arrest; and all three firearms were shipped in interstate commerce. (Tr. 118–19.)

## B.    The Defense Theory

Baughman was represented by two defense attorneys at trial, Steven Babcock and Russell Hart. According to the defense, while Baughman conceded that he had a Glock on his person when he was arrested and that the firearms in the white backpack belonged to him, the methamphetamine found in the back seat belonged to Paulicheck. Consistently, defense counsel conceded Baughman's guilt

as to Count 2, the felon in possession charge, in both their opening statement and closing argument. In his opening, Babcock said, "I'm doing something that I very rarely have ever done in my career, and I'm telling you right now you are going to find Julian Baughman guilty of Count 2 in the indictment. He was in possession of a firearm when he was prohibited from doing so. But that ends our concessions in regards to the counts on this case." (Tr. 23–24.) Later, Babcock reasserted,

> We ask you in this case to keep an open mind as the judge has instructed, because we're sitting here right now telling you that you are going to find my client guilty of one count in the indictment. But in doing that, I urge you to keep an open mind in taking a look at all of the evidence in this case, hearing all of the testimony in this case, and realizing that you still have a job definitely in regards to Count 1 and Count 3 on whether or not Julian Baughman knowingly possessed methamphetamine and, also, if there were firearms in . . . [furtherance] of a drug trafficking crime.

(Tr. 25.) Likewise, in closing, Hart said:

> Mr. Babcock talked to you yesterday about Count 2 right at the outset, and there is an easy count here. He told you we would ask you to hold Mr. Baughman accountable for Count 2, and that hasn't changed. Mr. Baughman possessed a firearm on April 10, 2019, he was a prohibited person at that time, and we're going to ask you to hold him accountable for that. That satisfies each element of that crime. . . . Mr. Baughman admitted that as he was being arrested, so we're going to ask you to hold him accountable on Count 2.

(Tr. 230; *see also* Tr. 231 ("He is convicted a felon, he can't have guns. Hold him accountable on Count 2."), 235–36, 240.)

However, defense counsel contested Baughman's guilt as to both Count 1 and Count 3. Counsel also argued that Tyran provided a legitimate, not drug-

6

related reason for Baughman to have come to his house: to get a holster for his firearms. (Tr. 232, 236–37.) Moreover, counsel emphasized that there were no messages on Baughman's cell phone linking the firearms to drugs. (Tr. 238.)

Regarding the methamphetamine, counsel conceded that everything in the rear of the Blazer—the white backpack, the crutches, and the firearms—were Baughman's but emphasized that the methamphetamine, which was found in the backseat, was found alongside Paulicheck's backpack. (Tr. 233–34.) Counsel elicited testimony that Baughman was the passenger in the vehicle, law enforcement did not see him access anything in the backseat of the vehicle, and the USPS envelope did not have any identifying information on it. (Tr. 46, 112, 239.) Defense counsel also emphasized that law enforcement did not investigate Paulicheck. (*See* Tr. 113, 234, 235 ("The absence of Heath Paulicheck today speaks volumes, and we can't forget it when we go back into that deliberation room today. Why isn't he here?"), 238.)

## II.    The Verdict, Sentencing, and Appeal

Baughman was ultimately convicted on all three counts of the Indictment. (Doc. 37.) The jury also found the requisite drug amount to trigger a mandatory minimum 10-year sentence on Count 1, possession with intent to distribute methamphetamine. (*See id.*) Baughman was sentenced on June 5, 2020. (*See* Doc. 67 (transcript).) With a total offense level of 34 and a criminal history

7

category of V, Baughman's advisory Guideline range was 235 to 293 months. (*Id.* at 4.) Count 1 had a mandatory minimum of ten years, and Count 3, possession of a firearm in furtherance of a drug trafficking crime, had a mandatory consecutive term of five years. (*Id.* at 5.) Baughman was sentenced to a total term of imprisonment of 240 months, which included concurrent terms of 180 months on Count 1 and 120 months on Count 2, with a consecutive 60-month term on Count 3. (*See* Doc. 56 at 2.) He also received a total of 5 years of supervised release. (*See id.* at 3.) Baughman appealed, (Doc. 59), and in May 2021, the Ninth Circuit affirmed his convictions in an unpublished memorandum disposition, concluding that there was sufficient evidence to support each of his convictions and that his sentence was reasonable, (Doc. 69).

## III.    First Habeas Motion

In March 2022, Baughman filed his first habeas petition under § 2255, raising several ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984), and a *McCoy* claim related to trial counsels' concession of guilt as to Count 2. (*See* Docs. 73, 75.) That motion was denied, but a certificate of appealability granted as to his *McCoy* claim. (Doc. 76.) In April 2024, the Ninth Circuit reversed and remanded, concluding that Baughman's *McCoy* claim should not have been summarily dismissed and further factual

8

development on that issue is required. (Doc. 84); *United States v. Baughman*, 2024 WL 1553711 (9th Cir. Apr. 10, 2024).

## IV.    Present Motion

Following remand, the parties filed supplemental briefs on Baughman's remaining *McCoy* claim. (Docs. 99, 102, 107.) In support of his supplemental brief, Baughman filed three exhibits, Babcock's September 10, 2024 deposition, (Ex. A, Doc. 99-1), Hart's September 10, 2024 deposition, (Ex. B, Doc. 99-2), and his own February 16, 2025 declaration, (Ex. C, Doc. 99-3). An evidentiary hearing was held on May 1, 2026, at which Babcock, Hart, and Baughman testified. The following additional exhibits were admitted at that hearing: discovery documents bearing Baughman's annotations, (Exs. D, E, & F, Doc. 115 at 1–3), and a letter Baughman wrote his defense counsel approximately three months prior to trial, (Ex. G, Doc. 115 at 4–6).

ANALYSIS

As recognized by the parties, there are two issues remaining in the case: (1) whether Baughman can proceed with a *McCoy* claim in this context, and (2) if so, whether the record supports such a claim. Following a brief discussion of the basis of a *McCoy* claim, these arguments are addressed in turn. Ultimately, while Baughman's claim can proceed in this context, it fails on the merits.

9

## I.   *McCoy* Claim

The Sixth Amendment recognizes a category of decisions that may be made by the defendant's lawyer in his professional management of the case, for instance, "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy*, 584 U.S. at 422 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)).  However, the Sixth Amendment also contemplates certain fundamental decisions that a criminal defendant has a right to make no matter how strongly his or her lawyer may disagree.  *Id.*  Such decisions include "whether to plead guilty, waive the right to a jury trial, testify on one's own behalf, and forgo an appeal." *Id.*  Relevant here, in 2018, the Supreme Court decided *McCoy*, which "added to that latter category the decision whether to maintain innocence or concede guilt at trial." *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024) (internal quotation marks omitted).  The Supreme Court explained that this decision is not a "strategic choice[] about how best to *achieve* a client's objectives" but rather "a choice[] about what the client's objectives in fact *are*." *McCoy*, 548 U.S. at 422.  Thus, "a defendant has a Sixth Amendment autonomy right to make the choice for himself." *Hashimi*, 110 F.4th at 627.  Accordingly, defense counsel must do two things "[t]o protect a client's right to decide for himself whether to concede guilty to a jury[:] . . . consult with a defendant before conceding guilt and . . . honor any objection raised by the

10

defendant." *Id.* at 628. But "[i]f 'a client declines to participate in his defense,' then the choice defaults to the attorney, who 'may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest.'" *Id.* (quoting *McCoy*, 584 U.S. at 424) (discussing *Florida v. Nixon*, 543 U.S. 175, 181 (2004)).

"[C]ritically, because counsel's strategic decisions and competence are not at issue, a violation of that autonomy right is not subject to the *Strickland* standard for ineffective assistance, which requires a showing of prejudice." *Id.* (referring to *Strickland v. Washington*, 466 U.S. 668 (1984)). "Instead, a violation of the Sixth Amendment autonomy right is a structural error, entitling the defendant to a new trial without the need to show prejudice because the error both negates the defendant's 'right to make fundamental choices about his own defense' and impacts the trial in ways that are 'immeasurable.'" *Id.* (quoting *McCoy*, 584 U.S. at 427–28) (alteration omitted).

## II.    *McCoy* Claim in the Habeas Context

The government insists that Baughman cannot pursue a *McCoy* claim in the habeas context because "[a] *McCoy* claim is an assertion of trial court error, asserted on direct appeal, based on the trial court's overruling of a defendant's strenuous objection to his counsel's concession of guilt." (Doc. 102 at 12.) But as made clear by the Ninth Circuit in its memorandum disposition remanding the

11

present case, "[w]hether or not Baughman registered his disagreement with counsel during trial cannot be discerned from the record before the district court." *Baughman*, 2024 WL 1553711, at *1. Necessarily then, the trial record was undeveloped as to this issue. *Cf. United States v. Hanoum*, 33 F.3d 1128, 1131 (9th Cir. 1994) ("This court usually declines to reach ineffectiveness challenges on direct appeal[] *because the claim cannot be advanced without development of facts outside the record*. The same approach has been taken for claims of ineffectiveness due to a conflict of interest." (emphasis added)). Because this claim was undeveloped at the time of direct appeal, it could not have been raised then and has not been procedurally defaulted here.

While the Ninth Circuit has not directly addressed this issue, a recent decision out of the Fourth Circuit reinforces the above conclusion. In *United States v. Hashimi*, the Fourth Circuit first considered Hashimi's *McCoy* claim on direct appeal but concluded that the record "was silent as to 'whether Hashimi consented or objected to his counsel's concession of guilt.'" 110 F.4th at 625 (quoting *Hashimi*, 768 F. App'x 159, 163 (4th Cir. 2019)). "So on the record as it then stood, [the court] could not say that Hashimi had been deprived of his *McCoy* autonomy right." *Id.* But the Fourth Circuit "invited Hashimi to help [them] assess his claim on a fuller record" by pursuing his claim in a motion under § 2255. *Id.* "Hashimi accepted the invitation," *id.* and, as part of proceeding under § 2255,

12

the court concluded that an evidentiary hearing was necessary because the record was "murky" on whether Hashimi's lawyer consulted with him about "conceding guilt and, if he did, whether and how exactly Hashimi responded," *id.* at 631–32. Inherent in that conclusion is the determination that a *McCoy* claim can give rise to relief in the habeas context. Indeed, following *Hashimi* several courts have allowed *McCoy* claims to proceed in this context. *See United States v. Arrington*, 2025 WL 815414 (D. Md. Mar. 12, 2025) (granting habeas relief following evidentiary hearing on *McCoy* claim); *Phillips v. State*, 570 P.3d 936, 945 (Alaska 2025) (granting state postconviction petition and explaining that "*McCoy* must be extended to situations in which the defendant had no opportunity to object[]"); *see also Delgado v. State*, 2025 WL 2230048, at *6–7 (M.D. Fla. Aug. 5, 2025) (denying habeas relief but considering *McCoy* claim on merits in postconviction context); *Jeffries v. Bohrer*, 2024 WL 4505010, at *8–9 (D. Md. Oct. 16, 2024) (same).

Baughman's *McCoy* claim may therefore proceed here. As mentioned above, the primary implication of this determination is that he need not show prejudice to prevail.[2] *See McCoy*, 584 U.S. at 426.

---

[2] As argued by the government, if *Strickland* were applied, Baughman's claim would fail under both prongs. (*See* Doc. 102 at 18–25.) In light of the overwhelming evidence surrounding Baughman's possession of a firearm, defense counsels' concession of guilt on Count 2 was neither unreasonable nor prejudicial.

13

### III.   Baughman's *McCoy* Claim

Baughman argues that his trial counsel deprived him of his rights under *McCoy* by admitting his guilt to Count 2, felon in possession of a firearm. Baughman alleges that he instructed counsel "not to admit guilt and in no way approved this defense." (Doc. 73 at 19.) Ultimately, the record shows that Babcock and Hart consulted with Baughman before conceding his guilt on Count 2 and that while he may have been reluctant, they did not override his objection.

### A.   Babcock

#### 1.   Deposition

Babcock was lead counsel during Baughman's trial in December 2019. (Doc. 99-1 at 6.) At the time of trial, Babcock had been with the Federal Defender's for approximately 15 years. (*Id.* at 8.) Prior to trial, Babcock and Hart had "multiple meetings" with Baughman and discussed every aspect of the case, including discovery, its strengths and weaknesses, and plea negotiations. (*Id.* at 8, 10.) According to Babcock, "one of the big sticking points, at that particular time, [wa]s that the Government was not going to dismiss the [§] 924(c) on the case," and that is why Baughman elected to proceed with trial. (*Id.* at 8–9.) At that point, Babcock remembers having numerous discussions with Baughman:

> We were of the opinion on that case, and [Baughman] was in agreement, that the best defense that we had was to Count 3. And we had talked with him extensively about how Count 2 was going to be tough to defend. He had a firearm on him when he was originally

14

> approached by law enforcement.
>
> . . .
>
> It was the decision that we had made, from a strategy point, that we would concede – we did not take that lightly – concede to Count 2. . . . [Baughman] understood that. That that's what we were going to do. And that we were going to argue that the Government c[ould not] prove that even if he was in possession of the firearm that was taken from his person, that they could establish that he was in possession of that in furtherance of Count 1.

(*Id.* at 9–10.) According to Babcock, they discussed this issue "on more than one occasion," including the fact that it would be part of the opening statement. (*Id.* at 11.) Babcock contends that Baughman never objected or expressed his disagreement. (*Id.* at 12.) As a result, Babcock "[a]bsolutely disagree[s]" with Baughman's assertion that he told his attorneys not to admit guilt. (*Id.* at 13.)

### 2. Testimony

Babcock's trial testimony was largely consistent with his deposition. Babcock clarified that Baughman was proactive and very engaged in his defense. He reaffirmed that the main sticking point in the case was Count 3, or the mandatory five-year consecutive firearm charge. As Babcock remembers it, Baughman's position was that he "would take the 10," referring to the drug charge, "but they are going to have to earn the 15," referring to the drug charge plus the mandatory consecutive firearm charge. Babcock stated that they discussed Baughman's options, which included pleading guilty and cooperating or proceeding to trial. He also stated that they considered pretrial suppression

motions related to both Baughman's contemporaneous statement to law enforcement that he had a gun and law enforcement's search of the vehicle. Babcock ultimately determined there was no merit to the motions and none were filed. Babcock did not remember either a disagreement with Baughman over this issue or Baughman's subsequent letter indicating that he was displeased with Babcock's decision not to file any motions. (*See* Ex. G, Doc. 115 at 4–6.)

As it relates to the concession of guilt on Count 2, Babcock emphasized that he has never before or since conceded guilt in this fashion. He remembered discussing it with Baughman on multiple occasions and that they all—Babcock, Hart, and Baughman—agreed it was the best strategy because it would give them some credibility with the jury when it came to fighting the other charges. Babcock reasserted that Baughman did not express his disagreement with this strategy and that if Baughman had objected, Babcock would not have proceeded. Babcock also confirmed that Baughman did not object at trial or at sentencing.

Babcock is found credible based on his extensive criminal defense experience and the fact he recognized and admitted the uniqueness of the strategy employed here.

## B.    Hart

### 1.    Deposition

At the time of Baughman's trial, Hart was a mentee with the Criminal

Justice Act ("CJA") Panel for the District of Montana. (Doc. 99-1 at 7; Doc. 99-2 at 5–6.) Hart remembers that Baughman "wanted to contest that the methamphetamine found in the vehicle was his," (Doc. 99-2 at 7), and that they discussed Count 2 as trial drew near:

> [A]s things got closer, I remember – I remember having one conversation with him in particular where we discussed – I think it always came up and we sort of hemmed and hawed on it a little bit, or [Baughman] did; but we talked about Count 2, how that, you know, the evidence was going to show that the firearm was on his person and we would need to concede that and make an argument as to Count 3, whether the firearm was possessed in furtherance of a drug trafficking crime.

(*Id.* at 8–9.) When asked about Baughman's reaction, Hart stated, "I don't think he enthusiastically endorsed it from the jump, but I remember having the conversation with him at Yellowstone County, and we agreed that that was going to be our strategy." (*Id.* at 9.) Hart also recounted how they were still hoping for a plea deal and that during those discussions it was made clear that "if we went to trial, we were going to have to - - have to concede the gun count." (*Id.* at 10, 13.) Hart did not recall if Baughman was "resistant to the idea," (*id.* at 11), but clarified that Baughman never said that they "should argue that the gun wasn't on his hip, at trial," (*id.* at 12). Nevertheless, Hart did state that Baughman "didn't like the idea of conceding anything." (*Id.* at 13.) Ultimately, Hart does not remember Baughman directly telling either him or Babcock not to concede guilt and affirmed that Baughman made no statements to that effect during the trial. (*Id.* at 14–15.)

17

## 2.    Testimony

Like Babcock, Hart's testimony is consistent with his deposition. Indeed, Hart explained that when he first met with Baughman early in the case, he got the impression that Baughman did not want to concede guilt to any of the charges. However, Hart further explained that after discovery was reviewed and trial preparation began, Baughman was confronted with the evidence against him, which included compelling evidence of guilt on Count 2. Hart reaffirmed that after his initial reluctance, Baughman neither expressly objected nor expressly consented to the proposed concession. Hart also clarified that he and Babcock made it clear to Baughman that going to trial and admitting guilt were Baughman's decisions to make. According to Hart, Baughman did not voice an objection prior to trial, during trial, or after trial.

Hart's deposition and testimony show he is credible as well. He did not attempt to testify to things he did not specifically remember. And while there is arguably some differences between his memory and Babcock's, those differences are superficial at best. For example, while Hart remembers Baughman being more reluctant to pursue a concession strategy, Hart confirmed that Baughman never explicitly directed either attorney not to do so.

## C.    Baughman

### 1.    Declaration

18

In his responsive declaration, Baughman concedes that the defense team discussed this issue with him on more than one occasion and that he did not object in open court. (Doc. 99-3 at 2–3.) However, he argues that both points support his request for relief as (1) they discussed it on more than one occasion because he consistently objected to pursuing a concession strategy and (2) he did not object in open court because he "was led to believe that the strategy of conceding to Count 2 was [his attorneys'] decision and [he] did not have a choice." (*Id.*)

### 2.    Testimony

Baughman testified that he had a very clear memory of his case and that he was very involved in his own defense. That representation is supported by discovery documents containing his annotations, (*see* Exs. D, E, F, Doc. 115 at 1– 3), as well as defense counsels' memory of the case. According to Baughman, it was at a September 2019 meeting that Babcock told him both that they would not be filing pretrial suppression motions and that they would concede guilt on Count 2. Baughman vehemently maintains that he wanted counsel to file pretrial motions to suppress and that he wanted to fire Babcock when Babcock refused to file the requested motions. At the time, he wrote a letter to that effect. (*See* Ex. G, Doc. 115 at 4–6.) Regarding the concession strategy, Baughman testified that he simply "surrendered" to defense counsels' decision to proceed because he did not feel as though he had a choice in the matter. He concedes, however, that at the time the

19

issue was raised he likely said "okay" and did not protest further.  Baughman also admits that he did not object at a subsequent meeting or at trial.  As it relates to trial, however, Baughman testified that he did not believe he had the ability to raise the issue with the Court directly.

**D.    Discussion**

Ultimately, Baughman's narrative can be squared with defense counsels' memory of the case, which does not reveal a *McCoy* violation.  It is undisputed that defense counsel and Baughman discussed the issue multiple times and that Baughman initially expressed his reluctance to concede guilt and his desire to pursue certain pretrial suppression motions.  However, the record does not credibly show that defense counsel overrode Baughman's explicit direction on the concession strategy.  To the contrary, Baughman testified that at the time the concession strategy was adopted, he likely said "okay" and offered no further resistance.  Baughman's testimony also shows that while he was disappointed with Babcock and felt as though he was a mere spectator in his own defense, he affirmatively chose to proceed with Babcock as his trial attorney.  Indeed, while Baughman's September 2019 letter to Babcock explicitly condemned Babcock's decision not to pursue suppression, it made no reference to the concession of guilt strategy.  Although Baughman clearly believed there was a procedural issue related to the evidence underlying Count 2, there is no contemporaneous record of

20

Baughman's disagreement with pursuing a concession strategy at trial. This is telling because Baughman was an active participant in his defense and does not give the impression that he could be cowed into a course of action against his will. Rather, after discovery was reviewed in the case, Baughman was forced to confront the reality that he was going to be found guilty on Count 2 and needed to pursue a defense that focused on Counts 1 and 3.

The one point that bears further mention is Baughman's assertion that he did not know that he could raise his objection with the Court at the time of the trial. This argument is not credible for two reasons. First, prior to trial, defense counsel informed Baughman that the decisions to proceed to trial and/or admit guilt were his to make. Nothing in the record indicates that Baughman was reluctant to voice his opinion on matters of his own defense. Second, at sentencing, Baughman took the very opposite approach. While his allocution made a veiled reference to his regret in not testifying, (*see* Doc. 67 at 14), he directly admitted to possessing a firearm at the time of his arrest: "I admitted my guilt on the scene as I'm admitting it here now," (*id.* at 15). While Baughman may not have wanted to concede guilt to Count 2, the record indicates he agreed to do so and now seeks to revisit that decision. These facts do not give rise to a viable *McCoy* claim.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Applying this standard here, a certificate of appealability is denied.

### CONCLUSION

Based on the foregoing, IT IS ORDERED:

1. Baughman's request to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docs. 73, 75) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Baughman files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 22–23–BLG–SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Baughman.

DATED this 20th day of May, 2026.

Susan P. Watters, District Judge
United States District Court

22